

ENTERED
08/31/2009

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 08-38121** |
| **YAZOO PIPELINE CO., L.P.** | § | **Chapter 11** |
| **and** | § | |
| **MATAGORDA OPERATING COMPANY** | § | |
| **and** | § | |
| **STERLING EXPLORATION &** | § | |
| **PRODUCTION CO., L.L.C.** | § | |
| **and** | § | |
| **ROBERT CHARLES CHEATHAM,** | § | |
| **PATRICIA LYNN CHEATHAM,** | § | |
| | § | |
| **MATAGORDA OPERATING COMPANY** | § | **CASE NO: 08-38122** |
| | § | |
| **STERLING EXPLORATION &** | § | **CASE NO: 08-38123** |
| **PRODUCTION CO., L.L.C.** | § | |
| | § | |
| **ROBERT CHARLES CHEATHAM,** | § | **CASE NO: 08-38124** |
| **PATRICIA LYNN CHEATHAM** | § | |
| | § | **Jointly Administered Order** |
| **Debtor(s).** | § | **Judge Isgur** |

**MEMORANDUM OPINION**

**Background**

Mining Oil, Inc. and Randall Sorrels are creditors of Yazoo Pipeline Co., L.P., Matagorda Operating Co., and Sterling Exploration & Production Co., L.L.C. (collectively, “Yazoo”). Mining Oil and Sorrels have filed this motion seeking summary judgment with respect to the appropriate post-petition, pre-confirmation interest rate payable on the secured promissory notes signed by Yazoo.

Section 506(b) of the Bankruptcy Code provides that “[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement . . . .” 11 U.S.C. § 506(b).

Thus, unlike most creditors who are not entitled to post-petition, pre-confirmation interest, § 506(b) provides an exception for oversecured creditors.

The issue in this case is the rate of interest oversecured creditors should receive. Mining Oil and Sorrels are oversecured creditors on four notes with pre-default interest rates of 12%. They assert that they are entitled to the default interest rates of 10%, 12%, 14% and 18%, respectively, as set forth in their loan agreements. Yazoo responds that the pre-default interest rate should apply and that the default rate urged by Mining Oil and Sorrels is inequitable.

For the reasons set forth below, the Court denies Mining Oil and Sorrels' request for summary judgment.

**Jurisdiction & Venue**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408.

**Summary Judgment Standard**

Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 365 (5th Cir. 2009). Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary proceedings.[1]

---

[1] Rule 56 was amended, effective December 1, 2007. Although most changes were stylistic, the changes to Rule 56(c) were substantive. Prior to the amendment, Rule 56(c) provided that the Court "shall" grant summary judgment if the relevant criteria were met. Effective December 1, 2007, the word "shall" was changed to "should". The Committee Notes to the 2007 amendment state that the word "[s]hould" was substituted for "shall" to recognize that, "although there is no discretion to enter summary judgment when there is a genuine issue as to any material fact, there is discretion to deny summary judgment when it appears that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory committee's notes (2007). As one commentator noted, "even when a motion for summary judgment is properly made and supported, it need not be granted . . . [s]uch a motion may be granted -

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine issue of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine issue of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5 th Cir. 2008) ("A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party."); *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F. 393, 405 (5th Cir. 2003). The Court should not weigh the evidence inasmuch as a credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara v. Garber*, 353 F.3d 393,

---

indeed, it should be granted - but it does not have to be granted." Bradley S. Shannon, *Should Summary Judgment Be Granted?*, 58 Am. U. L. Rev. 85, 95 (2008).

403 (5th Cir. 2003); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Sossamon*, 560 F.3d at 326; *U.S. v. 92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008). The non-moving party has a duty to respond with specific evidence demonstrating a disputed fact issue. *Celotex Corp. Cattrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *92,203.00 in United States Currency*, 537 F.3d at 507. When identifying specific evidence in the record, the non-movant must "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004); *Raga v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412; *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). Movants who do not bear the ultimate burden of proof often seek summary judgment after discovery has produced insufficient evidence to support the non-moving party's claims. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex,* 477 U.S. at 324. The non-movant must "go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue" rather than relying on conclusory allegations. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163–64 (5th Cir. 2006); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

The parties agree that the Court's analysis should begin with the Fifth Circuit's *Laymon* decision. *See Bradford v. Crozier (In re Laymon)*, 958 F.2d 72 (5th Cir. 1992). *Laymon* involved a dispute over the proper rate of interest under § 506(b). *Id.* at 73. Since neither the language nor the legislative history of § 506(b) refer to a specific interest rate, the Fifth Circuit looked to pre-Bankruptcy Code practice to determine the applicable rate. *Id.* at 74. The Fifth Circuit determined that "when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest." *Id.* at 75.

However, this pre-Code standard followed in *Laymon* did not provide for strict adherence to all contractual provisions. *Id.* In *Laymon*, the contract included a pre-default rate of 10% and a default rate of 18%. *Id.* Despite the fact that the *Laymon* debtor was in default, the Fifth Circuit declined to hold that the default rate automatically applied. *Id.* ("Under pre-Code law, courts were not required in all cases to apply a contractual default rate of interest in determining the amount of an 'allowed secured claim' . . . ."). Instead, the Fifth Circuit adopted the pre-Code "flexible" inquiry, which took equitable considerations into account when determining which contractual interest rate to apply:

> Most courts took a flexible approach, recognizing situations in which "the higher rate would produce an inequitable or unconscionable result, so as to require disallowance thereof." *Sheppley*, 62 B.R. at 277. Accordingly, whether the 18% default rate, rather than the 10% pre-default rate, should apply in this case must be decided by examining the equities involved in this bankruptcy proceeding.

*Id.* Thus, under *Laymon*, "oversecured creditors are entitled to their contract rate of interest under § 506(b), and may be entitled to their default rate of interest subject to the equities of the case." Deborah A. Crabbe, *Should An Over-Secured Creditor Be Entitled To Post-Petition Interest At The Default Rate?*, 17 AM. BANKR. INST. J. 8 (March 1998).

Six years later, the Fifth Circuit elaborated upon the *Laymon* standard in *Southland*. *See Southland Corp. v. Toronto-Dominion (In re Southland)*, 160 F.3d 1054 (5th Cir. 1998). The Fifth Circuit explained that "the default rate is generally allowed, unless 'the higher rate would produce an inequitable result.'" *Southland*, 160 F.3d at 1059 (quoting *Laymon*, 958 F.2d at 75). Thus, *Southland* made clear that the default rate presumptively applies, but the party opposing the default rate can overcome that presumption by demonstrating that the equities demand pre-default contract rate. *Id.*

Further, *Southland* explained that there is no particular list of factors that courts must consider when they are balancing the equities. *Id.* at 1060 ("Southland's suggestion that a balancing of the equities requires resort to a particular list of factors is by definition flawed."). Instead, courts must "exalt the individual circumstances of a case over the law's hard and fast rules." *Id.* Nevertheless, *Southland* did find one factor to be "especially significant:" whether "junior creditors will be harmed if the [movants] are awarded default interest." *Id.*[2]

After explaining their interpretation of *Laymon* and *Southland* in their motion for summary judgment, Mining Oil and Sorrels simply proclaimed that "[t]here are no reasons why the default interest rate on the Notes should not be applied in these bankruptcy cases." Although the Court understands the context in which such a statement was made, the Court disagrees. When Mining Oil and Sorrels filed their motion, the Debtors were proclaiming that all creditors would be fully paid and that equity would receive a substantial return. Subsequently, the Debtors have tempered these expectations. Yazoo now claims that if Mining Oil and Sorrels

---

[2] The Court also acknowledged other potential factors including: (i) "the spread between default and pre-default interest rates;" (ii) whether the movant's were "obstructing the [bankruptcy] process"; and (iii) the numerous factors set out in *In re W.S. Sheppley & Co.*, 62 B.R. 271 (Bankr. N.D. Iowa 1986).

receive default interest rates, there is a possibility that other creditors will receive less than they otherwise would have received. Until the issue of whether other creditors might be affected by the imposition of the default rate is resolved, summary judgment is not appropriate.

Mining Oil and Sorrels assume that the estate is solvent, as the Debtors originally suggested. However, the Court must await the outcome of that forecast. In *Laymon*, the Fifth Circuit remanded for an inquiry as to whether the jump from a 10% interest rate to an 18% default interest rate was equitable. Here, one of the larger loans has a default interest rate of 18%, which is 6% higher than the pre-default rate. If the estate is insolvent, the Court is concerned that the large rate increase could potentially be inequitable.

*Laymon* and *Southland* make clear that this dispute requires a fact specific inquiry. *See* Crabble, 17 AM. BANKR. INST. J. at 8 ("[T]he facts and circumstances of each case become critical to any claim for default interest under the equitable principles analysis."). Such an inquiry is necessary here. Thus, the case must proceed so that the Court can determine whether the default rate is equitable based on the specific facts of this case. Accordingly, the motion for summary judgment will be denied by separate order.

SIGNED **August 31, 2009.**

*Marvin Isgur*
*UNITED STATES BANKRUPTCY JUDGE*